UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:

JSMITH CIVIL, LLC,

    DEBTOR.

CASE NO. 23-02734-JNC
CHAPTER 11

| | |
|---|---|
| JSMITH CIVIL, LLC, | ) |
|   Plaintiff, | ) |
| v. | ) Adversary Case No. |
|  | ) 25-00157-5-JNC |
| SOUTH ATLANTIC CONFERENCE OF SEVENTH-DAY ADVENTISTS, INC. and BRODIE CONTRACTORS INC., | ) |
|   Defendants. | ) |

**DEFENDANT SOUTH ATLANTIC CONFERENCE OF SEVENTH-DAY ADVENTISTS, INC. MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Bankruptcy Rule 7012, Defendant South Atlantic Conference of Seventh-Day Adventists, Inc. ("SACSDA"), by and through undersigned counsel, respectfully moves this Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

**I.    INTRODUCTION**

This adversary proceeding is a subcontractor's payment dispute with its general contractor, dressed up as claims against the project property owner. The Complaint and its exhibits show that Debtor–Plaintiff contracted with Brodie Contractors, Inc. for the work and now seeks to collect retainage allegedly owed under that Subcontract. Nevertheless, Plaintiff sues the owner, a non-

profit religious organization ("SACSDA"), for § 542 "turnover," breach of contract, and unjust enrichment.

Each theory fails on the face of the pleadings. Section 542(a) requires present possession of specific estate property; Plaintiff alleges only a disputed receivable (retainage) and nowhere alleges that SACSDA holds the funds or traceable proceeds. The contract claim fails because there is no privity between Plaintiff and SACSDA and any benefit to SACSDA from Plaintiff's subcontract performance is, at most, incidental, not the product of any promise for Plaintiff's direct benefit. And the quasi-contract claim is barred by the existence of an express subcontract governing payment and retainage; in all events, Plaintiff affirmatively alleges that SACSDA paid Brodie Contracting, Inc. for the work, foreclosing any inference of "unjust" enrichment by the owner and confirming that Plaintiff looked to Brodie, not SACSDA, for payment.

Because the Complaint pleads no facts that plausibly state a cognizable claim against SACSDA under any theory, all claims against SACSDA should be dismissed with prejudice under Rule 12(b)(6).

## II. STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Bankruptcy Rule 7008, requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this threshold obligation is subject to dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see In re Adair Realty Group, LLC*, No. 25-00597-5-PWM, Adv. No. 25-00040-5-PWM, 2025 WL 2856853, at *7 (Bankr. E.D.N.C. Oct. 8, 2025).

For purposes of Rule 12(b)(6), all factual allegations in the complaint must be accepted as true and all reasonable inferences drawn in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). However, legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). A claim is facially plausible only when the factual content alleged "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Threadbare recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.*

Accordingly, to survive dismissal, a complaint must do more than allege conclusions or legal characterizations; it must present specific factual content that, taken as true, permits the Court to reasonably infer that the defendant is liable under the applicable legal theory. Conclusory or speculative allegations do not meet this standard.

### III.   PLAINTIFF'S CLAIM FOR TURNOVER FAILS AS A MATTER OF LAW

Section 542(a) compels delivery only of specific estate property (or its value) that is in the possession, custody, or control of the target during the case and that the trustee could immediately "use, sell, or lease" under § 363. 11 U.S.C. § 542(a). In this Circuit, present possession (actual or constructive) of the property or its identifiable proceeds by the defendant is a "primary condition" to turnover. *Hager v. Gibson*, 109 F.3d 201, 210–11 (4th Cir. 1997) (relying on *Maggio v. Zeitz*, 333 U.S. 56, 63–64 (1948)). Relatedly, turnover is not a vehicle to litigate disputed contract rights; it is aimed at returning property the estate may immediately use; not converting a contract dispute into summary collection. *Hager*, 109 F.3d at 210–11 & n.4 (collecting cases, including *Charter*);

*Charter Crude Oil Co. v. Exxon* (*In re Charter Co.*), 913 F.2d 1575, 1579–80 (11th Cir. 1990); *see U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 202–03 (1983).

Plaintiff pleads that the $35,108.92 is "retainage"/an "account receivable" owed on a subcontract (their words). That describes a debt claim, not "property" the defendant presently holds. Absent allegations (or evidence) that defendant now possesses the specific funds (which they do not), or their identifiable, traceable proceeds, § 542(a) does not apply. *Hager*, 109 F.3d at 210–11 (turnover denied where defendant lacked present possession of funds or proceeds); *Maggio*, 333 U.S. at 63–64 (turnover cannot impose "a duty impossible of performance").

Even if Plaintiff had alleged present possession, the pleadings confirm the estate's interest is, at most, a contested contractual claim to retainage (subject to construction defenses such as conditions precedent, punch-list, backcharges, setoff/recoupment, etc.). Courts repeatedly hold **§** 542(a) is not a shortcut to adjudicate such disputes. *Hager*, 109 F.3d at 210–11 & n.4 ("turnover proceedings should not to be used to liquidate disputed claims"); *Charter*, 913 F.2d at 1579–80 (same). Until liability and amount are established in the appropriate merits forum, there is no "property that the trustee may use, sell, or lease." Plaintiff's inclusion of a breach of contract claim (Count II) on these same amounts is an outright admission that there are unresolved contract issues (conditions precedent, acceptance, offsets/back-charges, lien waivers, warranty obligations, etc.). That is the hallmark of an ordinary collection action, not turnover of an identified estate asset.

Section 542(a)'s "value" remedy is tethered to the same possession prerequisite; it allows a court to award value for property the defendant held during the case but cannot physically deliver. It does not authorize recovery of "value" from someone who never possessed the specific property or traceable proceeds. *Hager*, 109 F.3d at 210–11.

Because Plaintiff pleads only § 542(a) and (i) does not plausibly allege that Defendant presently possesses the retainage or its identifiable proceeds, and (ii) seeks to use turnover to resolve a disputed receivable, the § 542(a) count should be dismissed (Rule 12(b)(6)) or denied on the merits. *See Hager*, 109 F.3d at 210–11; *Charter*, 913 F.2d at 1579–80.

### IV. PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT FAILS BECAUSE THERE IS NO PRIVITY OF CONTRACT AND SACSDA IS MERELY AN INCIDENTAL BENEFICIARY.

Plaintiff cannot state a breach-of-contract claim against SACSDA because there is no privity between them. In North Carolina, a breach-of-contract claim requires a valid contract between the parties; absent privity, the claim fails. *Watson Elec. Constr. Co. v. Summit Cos., LLC*, 160 N.C. App. 647, 650–51, 587 S.E.2d 87, 90–91 (2003) (affirming summary judgment where subcontractor "neither claimed that it had a direct contract with the [owners] nor produced evidence tending to show that the [owners] ratified the contract"). The complaint and its exhibits confirm Plaintiff's agreement is with Brodie Contractors, Inc., not SACSDA, and Plaintiff pleads no facts that SACSDA assumed, ratified, or otherwise became bound by that agreement.

Nor has Plaintiff alleged the narrow alternative routes around privity. A plaintiff must plausibly show either privity or status as an intended third-party beneficiary; conclusory assertions are insufficient. *Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc.*, 143 N.C. App. 1, 8–9, 545 S.E.2d 745, 750 (2001) (party must show "privity of contract, or [that] it is a direct beneficiary of the contract"). North Carolina presumes parties contract for themselves, and a third-party-beneficiary claim requires a contract "entered into for [the third party's] direct, and not incidental, benefit." *LSB Fin. Servs., Inc. v. Harrison*, 144 N.C. App. 542, 549, 548 S.E.2d 574, 579 (2001) (citing *Leasing Corp. v. Miller*, 45 N.C.App. 400, 405–6, 263 S.E.2d 313, 317 (1980).

Here, Plaintiff identifies no contract language or facts showing the contracting parties intended to confer enforceable rights on Plaintiff vis-à-vis SACSDA. To the contrary, any benefit to SACSDA from Plaintiff's performance would at most be incidental, which creates no enforceable rights or duties. *Vogel v. Reed Supply Co.*, 277 N.C. 119, 127–29, 177 S.E.2d 273 (1970) (owner is merely an incidental beneficiary of subcontract and cannot sue upon it).

Because there is no contract between Plaintiff and SACSDA, and no well-pleaded facts establishing a cognizable exception, Plaintiff's contract theory fails as a matter of law.

## V.     PLAINTIFF'S QUANTUM MERUIT / UNJUST ENRICHMENT THEORY FAILS AS A MATTER OF LAW

North Carolina does not imply a contract where an express one governs the subject matter. *Booe v. Shadrick*, 322 N.C. 567, 570–71, 369 S.E.2d 554, 556–57 (1988). Plaintiff pleads, and attaches, the Subcontract, and even demands the "agreed-upon price … including the outstanding and unpaid Retainage Amount ($35,108.92)." (¶¶ 66–73). Because the parties' rights are defined by the Subcontract, the quantum meruit/unjust enrichment claim against SACSDA must be dismissed.

Furthermore, "[t]he mere fact that one party was enriched, even at the expense of the other, does not bring the doctrine of unjust enrichment into play. 'There must be some added ingredients to invoke the unjust enrichment doctrine.' " *Peace River Elec. Co-op., Inc. v. Ward Transformer Co., Inc.*, 116 N.C. App. 493, 509, 449 S.E.2d 202, 213 (1994) (citing *Williams v. Williams*, 72 N.C.App. 184, 187, 323 S.E.2d 463, 465 (1984)[1]; *see also Collins v. Davis*, 68 N.C.App. 588, 591, 315 S.E.2d 759, 761 (recovery under quantum meruit based upon contract implied-in-law is only proper in circumstances such that it would be "unfair" for the recipient to retain the benefit of the

---

[1] Quoting, inaccurately in part, *Wright v. Wright*, 305 N.C. 345, 351, 289 S.E.2d 347, 351 (1982), but the point is retained.

claimant's services), aff'd per curiam, 312 N.C. 324, 321 S.E.2d 892 (1984). Where an owner pays the general contractor under the prime contract, a subcontractor cannot recover from the owner in unjust enrichment. *Watson Elec. Constr. Co. v. Summit Cos., LLC*, 160 N.C. App. 647, 652–53, 587 S.E.2d 87, 92 (2003) (owner not unjustly enriched despite benefit because owner made regular payments to GC). Plaintiff affirmatively alleges SACSDA paid Brodie for this work (¶ 70), which forecloses any inference of "unjust" retention by SACSDA.

Quantum meruit requires that services be rendered for the defendant with a reasonable expectation of payment from that defendant. See *Booe*, 322 N.C. at 570–71, 369 S.E.2d at 556–57. The Complaint and exhibits show Plaintiff contracted with, and looked to, Brodie for payment, not SACSDA. A bare allegation that Plaintiff "expected" both Defendants to pay (¶ 71) is a legal conclusion contradicted by the documents and is not credited on a motion to dismiss.

Plaintiff's theory seeks the unpaid retainage owed under the Subcontract (¶ 73), i.e., the very contract remedy Plaintiff pursues elsewhere. North Carolina law does not permit using unjust enrichment to end-run a negotiated allocation of risk, payment terms, and retainage provisions. *Booe*, 322 N.C. at 570–71, 369 S.E.2d at 556–57.

The quantum meruit/unjust enrichment claim should be dismissed against SACSDA because an express contract governs the parties (Plaintiff and Brodie); and because the pleadings defeat the "unjust" element and show no reasonable expectation of payment directly from SACSDA.

## VI. CONCLUSION

Plaintiff's pleading cannot cross the Rule 12(b)(6) line. First, the § 542(a) count fails because it seeks turnover of a disputed receivable, not specific estate property presently in SACSDA's possession or traceable proceeds, and attempts to use turnover to liquidate contract

issues, which the statute does not allow. Second, the contract claim fails for lack of privity and because any benefit to SACSDA from Plaintiff's subcontract with Brodie is, at most, incidental, creating no enforceable rights or duties. Third, the quasi-contract claim fails because an express subcontract governs the subject matter and, in any event, Plaintiff pleads no "unjust" enrichment by an owner that paid the general contractor, and no reasonable expectation of payment from SACSDA. For these reasons, SACSDA respectfully requests that the Court grant its Motion to Dismiss and dismiss all claims against SACSDA with prejudice, and award such other and further relief as the Court deems just and proper.

Respectfully submitted, this 10th day of October, 2025.

Buchalter APC

/s/ Brian S. Goldberg
Brian S. Goldberg
Georgia Bar No. 128007 (*Pro Hac Vice*)
3475 Piedmont Road NE, Suite 1100
Atlanta, GA 30305
*Counsel for South Atlantic Conference of Seventh-Day Adventists, Inc.*

/s/ Heather Wright
Heather Wright
NC Bar No. 28874
1 Music Circle South, Suite 300
Nashville, TN 37203
*Counsel for South Atlantic Conference of Seventh-Day Adventists, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2025, I electronically filed the foregoing Defendant South Atlantic Conference of Seventh-Day Adventists, Inc.'s Motion to Dismiss and Memorandum of Law in Support with the Clerk of Court using the CM/ECF system, which will send notice of such filing to all CM/ECF participants. I further certify that a copy was served on counsel for the Debtor–Plaintiff by email and by depositing the same in the United States Mail, first-class postage prepaid, addressed as follows:

> Joseph Z. Frost (NCSB No. 44387)
> Buckmiller, Boyette & Frost, PLLC
> 4700 Six Forks Road, Suite 150
> Raleigh, North Carolina 27609
> Email: jfrost@bbflawfirm.com

Dated: October 10, 2025

/s/ Brian S. Goldberg
Brian S. Goldberg
Georgia Bar No. 128007 (*Admitted Pro Hac Vice*)
3475 Piedmont Road NE, Suite 1100
Atlanta, GA 30305
*Counsel for South Atlantic Conference of Seventh-Day Adventists, Inc.*